IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH WASHINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 04 C 1450 |
| v. | ) | |
| | ) | |
| INTERNATIONAL SURVEY | ) | |
| RESEARCH, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On February 24, 2004, Plaintiff Joseph Washington filed a Complaint against his former

employer, Defendant International Survey Research, LLC ("ISR"), alleging race discrimination

and retaliation in violation of Title VII, 42 U.S.C. § 2000e *et seq*., and 42 U.S.C. § 1981. Before

the Court is ISR's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure

56(c). For the following reasons, the Court grants ISR's motion.

## BACKGROUND

### I.       Northern District of Illinois Local Rules

ISR contends that Washington violated various provisions of Northern District of Illinois

Local Rule 56.1. The Court thus turns to the rules governing the parties' summary judgment

filings before addressing the merits of the case. Local Rule 56.1(a)(3) requires the moving party

to provide "a statement of material facts as to which the moving party contends there is no

genuine issue." Local Rule 56.1(b)(3) requires the nonmoving party to admit or deny every

factual statement proffered by the moving party and to concisely designate any material facts

that establish a genuine dispute for trial. The purpose of Rule 56.1 statements is to identify the

relevant evidence supporting the material facts, not to make factual or legal arguments. *Solaia Tech. LLC v. Arvinmeritor, Inc.*, 361 F.Supp.2d 797, 826-27 (N.D. Ill. 2005).

The types of evidentiary material available to support Rule 56.1 statements are numerous, but the most common materials include affidavits, deposition transcripts, and business documents. *Malec v. Sanford,* 191 F.R.D. 581, 584 (N.D. Ill. 2000). Under Federal Rule of Civil Procedure 56(e), supporting and opposing affidavits must show that the affiant is competent to testify to the matters at hand, and the affidavit must contain facts that would be admissible at trial. *Markel v. Board of Regents of the Univ. of Wisconsin*, 276 F.3d 906, 912 (7th Cir. 2002). Furthermore, an affidavit or declaration that is not sworn or certified under penalty of perjury cannot be considered as evidence because it fails to meet Federal Rule of Civil Procedure's requirements. *See id.*; *Woods v. City of Chicago,* 234 F.3d 979, 998 (7th Cir. 2000) (citing 28 U.S.C. § 1746).

Statements and responses that do not properly cite to the record are subject to the Court's discretion as to their admission. *See Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir. 1997). Statements that are not contested are deemed admitted. *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003). The Court also reminds Plaintiff that when citing to the record in his legal memoranda, he is required to cite to the numbered paragraphs of his Local Rule 56.1 statement and not to the underlying parts of the record. *See Malec,* 191 F.R.D. at 586. Finally, the Court reminds both parties that their Rule 56.1 statements do not abrogate their obligation to give their version of the facts in the supporting memoranda. *Id.* at 585. With these principles in mind, the Court turns to the material facts of this case.

## II.     Relevant Facts

**A.     Introduction**

ISR, a Delaware corporation located in Chicago, Illinois, is in the business of conducting employee surveys.  (R. 31-1, Defendant's Local Rule 56.1 Statement, ¶¶ 3, 4.)  Initially, Washington, an African-American male, worked for ISR from November 1994 until February 1996.  (*Id*. ¶ 17.)  In 1996, Washington resigned from ISR to take another job.  (*Id.* ¶ 18.)  On April 13, 1998, ISR rehired Washington as an Information Technology ("IT") Technical Support Specialist.  (*Id*. ¶ 19.)

**B.     Washington's Job Performance**

Upon returning to ISR, Washington's job responsibilities included personal computer ("PC") support, PC laptop configuration, ordering supplies for the IT department, basic network administrative duties, and end user support.  (*Id.* ¶ 21.)  In 2001, Washington's supervisor was John Mills, the Global IT Manager for ISR.  (*Id.* ¶ 22.)  While working for Mills, Washington's job responsibilities, included assisting with PCs, purchasing IT equipment, wide area network administration ("WAN"), and maintaining ISR's network.  (*Id.* ¶ 23.)

While Mills was supervising Washington, the NIMDA virus attacked ISR's computer systems, creating false files and taking up all available server space until the computers stopped functioning.  (*Id.* ¶ 27; R. 39-1 Plaintiff's Local Rule 56.1 Statement ¶ 2.)  Mills put Washington on probation for his actions during the NIMDA virus infection.  (Pl.'s Stmt. ¶ 10.)  On October 1, 2001, ISR issued Washington a letter documenting his probation related to his performance during the NIMDA virus outbreak.  (Def.'s Stmt. ¶ 30, Washington Dep., Ex. 9.)  The letter explained that during the NIMDA virus problem, Washington failed to take an active leadership role and left too many responsibilities to others who did not have the necessary training and

experience. (*Id.*) The letter further explained that Washington had failed to accomplish specific tasks that ISR had addressed in his recent performance reviews. (*Id.*) Also, the letter outlined the issues that Washington needed to address to improve his job performance. (*Id.*)

In December 2001, Roger Wozniak, the Global IT & Survey Processing Manager, became Washington's supervisor. (*Id.* ¶ 25.) In June 2002, Wozniak gave Washington his 2002 performance review. (*Id.* ¶ 36.) In the overall rating category, Washington received a rating of "Exceed expectations on all priority objectives and several remaining objectives." (Pl.'s Stmt., Ex. 10.) Under the development plan, Wozniak recommended that Washington should work with end users more directly, start to have a peer relationship with Matthew White, another IT Technical Support Specialist, and participate in desktop support issues. (*Id.*)

In October 2002, Wozniak gave Washington a verbal warning that he was not happy with Washington's work as it related to ISR's network. (Def.'s Stmt. ¶ 40.) Washington testified that in December 2002, Wozniak reprimanded him about his performance concerning a website for the marketing department. (*Id.* ¶ 43, Washington Dep. at 123-24.)

In May 2003, Wozniak gave Washington his 2003 performance review. (Def.'s Stmt. ¶ 45.) Wozniak's review indicated that Washington was not meeting ISR's expectations in all categories and that improvement was needed in all areas, including help desk support, end user support, and server administration. (*Id.*, Pl.'s Ex. 16.) Under the development plan, Wozniak explained that Washington had not improved after his managers gave him verbal feedback regarding his unsatisfactory performance. (*Id.*) Wozniak then recommended that Washington select a 2-3 day IT training course to address the issues highlighted in his review. (*Id.*) Also, Wozniak placed Washington on a probationary and supervisory period for 60 days. (*Id.*; Def.'s

Stmt. ¶ 50.)

In the summer of 2003, ISR concluded that Washington's performance issues continued. (Def.'s Stmt. ¶ 57.) On July 30, 2003, ISR terminated Washington's employment based on his failure to improve his performance while on probation. (*Id.* ¶ 60.)

### C. Washington's Allegations of Discrimination

Washington bases his harassment claim on Wozniak's conduct. (*Id.* ¶ 68.) Some of this behavior includes Wozniak's demeaning tone, facial expressions, and body language while interacting with Washington. (*Id.*) Other conduct includes Wozniak's failure to include Washington in important communications, assigning him menial tasks, faulting him for problems he did not cause, and criticizing his performance. (*Id.* ¶ 68; Pl.'s Stmt. ¶¶ 1, 15.) For example, Washington testified that Wozniak blamed him for a marketing website failure. (Pl.'s Stmt. ¶ 19.) On another occasion, Wozniak asked Washington to move a printer by himself. (*Id.* ¶ 16.) Washington testified that he moved the printer while Wozniak and White watched. (*Id.*) Washington also testified that he hurt his back as a result of moving the printer. (*Id.* ¶ 17.)

### D. Retaliation Allegations

On December 9, 2002, Washington filed a charge of racial harassment with the Illinois Department of Human Rights ("IDHR"). (*Id.* ¶ 30; Def.'s Stmt. ¶ 7.) After ISR learned of Washington's IDHR complaints of racial harassment, Ronald Dowty, ISR's Chief Financial Officer and General Counsel, and Sara Talsma, ISR's Human Resources Manager, investigated Washington's claims of harassment. (Def.'s Stmt. ¶ 74.) Washington met with Dowty and Talsma roughly three to six times from January 2003 until July 2003 regarding his charge of discrimination, his job performance, and his probation. (*Id.* ¶ 75.) Washington did not supply

names of his co-workers who supported his harassment allegations to Dowty and Talsma. (*Id.* ¶ 77.) Nevertheless, Dowty and Talsma continued the investigation and contacted certain ISR employees. (*Id.* ¶ 78.) After they completed the investigation, ISR concluded that neither Wozniak nor anyone else at ISR had unlawfully harassed or discriminated against Washington. (*Id.* ¶ 79.)

On September 9, 2003, Washington amended his IDHR charge to include race discrimination based on his termination and a retaliation claim. (Def.'s Stmt. ¶ 8; Pl.'s Stmt. ¶ 56.) On November 26, 2003, the Equal Employment Opportunity Commission ("EEOC") issued Washington a Notice of Right to Sue. (Def.'s Stmt. ¶ 10.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The existence of a factual dispute is not sufficient to defeat a summary judgment motion, instead the non-moving party must present definite, competent evidence to rebut the summary judgment motion. *Butts v. Aurora Health Care, Inc.,* 387 F.3d 921, 924 (7th Cir. 2004).

## ANALYSIS

### I.    Race Discrimination – Hostile Work Environment Claim[1]

First, Washington contends that Roger Wozniak's conduct and comments created a hostile work environment. Title VII prohibits an employer from "requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). To establish a hostile work environment, Washington must demonstrate that Wozniak harassed him because of his race and that the harassment was so severe or pervasive that it created a hostile work environment. *Hrbowski v. Worthington Steel Co.,* 358 F.3d 473, 476 (7th Cir. 2004). To qualify as hostile, a work environment must be objectively and subjectively offensive, that is, it must be a work environment that a reasonable person would find hostile or abusive, and one that the plaintiff in fact perceived to be hostile or abusive. *Ezell v. Potter,* 400 F.3d 1041, 1047-48 (7th Cir. 2005). Courts determine whether a work environment is hostile or abusive by looking at the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

Viewing the evidence in a light most favorable to Washington, the record reveals that Wozniak's behavior included leaving Washington out of important communications which prevented him from completing his assignments, assigning Washington to menial and degrading tasks, faulting Washington for problems that he had not caused, speaking to him in a demeaning

---

[1]   Because the liability standards under Title VII and 42 U.S.C. § 1981 are the same, the Court need not address Washington's race discrimination claims under both statutes. *See Herron v. DaimlerChrysler,* 388 F.3d 293, 298 (7th Cir. 2004).

tone, and criticizing his work.

Based on these facts, Washington has failed to establish the first requirement of a hostile work environment claim, namely, that Wozniak harassed him because of his race. *See Hrbowski,* 358 F.3d at 476. To bring a harassment claim, the conduct must have a discriminatory character or purpose. *See Hardin v. S.C. Johnson & Son, Inc.,* 167 F.3d 340, 345-46 (7th Cir. 1999). Here, Washington does not provide any evidence that Wozniak's conduct was based on racial animus. Specifically, Washington does not present evidence that there was any connection between Wozniak's alleged "rude, abrupt, or arrogant conduct" and Washington's race. *See Herron v. DaimlerChrysler,* 388 F.3d 293, 302-03 (7th Cir. 2004). Similarly, there was nothing inherently racial about Wozniak's conduct or comments. *See Hardin,* 167 F.3d at 345. In fact, Washington admits that Wozniak never referred to him or talked to him using racially derogatory terms. (*See* Def.'s Stmt. ¶ 64.) Washington also admits that no one from ISR ever directed racially derogatory terms or language at him. (*Id.* ¶ 65.)

Although Washington subjectively believes that Wozniak's comments and conduct constituted a racially hostile work environment, Washington's belief cannot serve as the sole basis of his claim. *See Ezell,* 400 F.3d. at 1047-48. Without a racial component to Wozniak's conduct, Washington has failed to establish that a reasonable person would find his work environment sufficiently hostile based on race. *See Herron,* 388 F.3d at 302-03. Accordingly, Washington has not established a genuine issue of material fact concerning his hostile work environment claim, and the Court grants ISR's motion for summary judgment on this claim.

## II.     Race Discrimination – Disparate Treatment Claim

Next, Washington claims that ISR discriminated against him based on race. Although

Washington may prove intentional discrimination under either the direct or indirect method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), he chooses to proceed under the indirect method of proof. To established a prima facie case of intentional discrimination under the indirect method, Washington must show that (1) he is a member of a protected class, (2) he reasonably performed to ISR's legitimate expectations, (3) ISR took an adverse employment action against him, and (4) ISR treated him differently than similarly situated employees outside of his protected class. *McDonnell Douglas,* 411 U.S. at 802. If Washington makes this showing, the burden of production shifts to ISR to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* If ISR meets this burden, Washington must then show that ISR's proffered explanation is pretext for discrimination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). At all times, the ultimate burden of persuasion remains with Washington. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 517, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

The Court turns to the second element of Washington's prima facie case of race discrimination – whether Washington performed to ISR's legitimate expectations – because it is dispositve. Uncontroverted evidence in the record reveals that ISR terminated Washington's employment because his performance did not improve after he was put on probation in May 2003. Simply put, ISR has established that Washington's job performance did not meet its legitimate expectations.

In May 2003, Wozniak gave Washington his 2003 performance review which indicated that Washington was not meeting ISR's expectations in all categories and that he needed to improve in all areas, including help desk support, end user support, and server administration. In

the review, Wozniak explained that Washington had not improved his performance after his managers had given him verbal feedback during the year. Wozniak then placed Washington on a probationary and supervisory period for 60 days.

Despite the opportunity to attend training and to receive feedback and direction from his supervisors, ISR concluded that Washington's performance issues continued in the summer of 2003. On July 30, 2003, ISR terminated Washington's employment based on his failure to improve his performance while on probation.

Washington has not come forward with any definite, competent evidence refuting ISR's reason for his termination. Instead, Washington argues that the Court cannot rely on his poor performance reviews in determining whether he was meeting ISR's legitimate expectations because the reviews were unjustified. Washington's opinion that his reviews were unjustified, however, does not establish a genuine issue of material fact. *See Uhl v. Zalk Josephs Fabricators, Inc.,* 121 F.3d 1133, 1137 (7th Cir.1997) ("Facts, not an employee's perceptions and feelings, are required to support a discrimination claim."). In other words, an employee's belief that he performed to his employer's legitimate expectations does not create a genuine issue of material fact. *Olsen v. Marshall & Isley Corp.,* 267 F.3d 597, 600 (7th Cir.2001) ("employee's perception of his own performance, however, cannot tell a reasonable factfinder something about what the employer believed about the employee's abilities"). Similarly, Washington's argument that some of his co-workers thought he did a good job cannot create a genuine issue of material fact. *Peele v. Country Mut. Ins. Co.,* 288 F.3d 319, 329 (7th Cir. 2002).

In sum, ISR has established that Washington was not meeting its legitimate job expectations at the time of Washington's termination. *Haywood v. Lucent Techs.*, 323 F.3d 524,

531 (7th Cir. 2003).  Because Washington has failed in his burden of establishing this element of his prima facie case of race discrimination, the Court need not determine whether ISR's reasons for terminating Washington's employment were pretext for discrimination.  *See Mannie v. Potter,* 394 F.3d 977, 984 (7th Cir. 2005).

## III.    Retaliation Claim

Unlawful retaliation occurs when an employee is the subject of an adverse employment action in response to filing a claim of discrimination.  *See* 42 U.S.C. § 2000e-3(a); *Rogers v. City of Chicago,* 320 F.3d 748, 753 (7th Cir. 2003).  There are two ways of establishing discriminatory retaliation.  *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002).  One way is the indirect method, which is an "adaptation of *McDonnell Douglas* to the retaliation context."  *Id.*; *see also Cichon v. Exelon Generation Co., LLC,* 401 F.3d 803, 810 (7th Cir. 2005). The other is the direct evidence method.  *Stone,* 281 F.3d at 644; *see also Haywood*, 323 F.3d at 531. Washington claims he can establish his retaliation claim under both the direct and indirect methods of proof.

### A.    Direct Method

Under the direct method, Washington must "present direct evidence of a statutorily protected activity, an adverse employment action, and a causal connection between the two." *Haywood*, 323 F.3d at 531.  Direct evidence means evidence that enables the trier of fact to find retaliation "without resort to inference from circumstantial evidence."  *Stone,* 281 F.3d at 644; *see also Hudson v. Chicago Transit Auth.,* 375 F.3d 552, 560 (7th Cir. 2004) ("inferences and circumstantial evidence cannot be used to establish a prima facie case for retaliation under the direct evidence test").

Washington's contention that he can demonstrate retaliation with direct evidence is without merit. Indeed, Washington does not provide any evidence in his Local Rule 56.1 statement supporting his retaliation claim. Instead, he argues that Dowty and Talsma's investigation into his IDHR claim of racial harassment was a sham investigation. This argument does not amount to evidence that is essentially "an admission by the decision-maker that his actions were based on the prohibited animus." *Hottenroth v. Village of Slinger,* 388 F.3d 1015, 1028 (7th Cir. 2004) (citing *Radue v. Kimberly-Clark Corp*., 219 F.3d 612, 616 (7th Cir. 2000)). Further, there is no evidence in the record supporting a causal connection between Washington's termination and his IDHR complaint. *See Stone*, 281 F.3d at 644.

While the question of how much evidence is necessary to present a triable issue of retaliation is "not susceptible of a general answer," *see id.,* the amount needed is more than what Washington has presented to the Court.

### B.     Indirect Method

Next, Washington argues that he can establish his retaliation claim via the indirect method of proof. To make a prima facie case of retaliation under the indirect method, Washington must establish that (1) he engaged in statutorily protected activity, (2) he met ISR's legitimate expectations, (3) he suffered an adverse employment action, and (4) he was treated less favorably than similarly situated employees outside of his protected class. *Haywood*, 323 F.3d at 531.

Because these elements parallel the *McDonnell Douglas* elements of a disparate treatment claim, Washington's attempt to establish retaliation under the indirect method fails. *See Stone,* 281 F.3d at 644. As discussed in detail above, Washington has not established that he

was meeting ISR's legitimate performance expectations. Accordingly, the Court grants ISR's motion for summary judgment on Washington's retaliation claim.

## IV. Failure to Promote Claim

Finally, ISR contends that because Washington failed to allege his failure to promote claim in his EEOC or IDHR charges, the Court cannot consider this claim. *See Cheek v. Peabody Coal Co.,* 97 F.3d 200, 202 (7th Cir. 1996) ("A plaintiff may pursue a claim not explicitly included in an EEOC complaint only if her allegations fall within the scope of the earlier charges contained in the EEOC complaint."). The Court need not address ISR's arguments, however, because Washington fails to make any argument in support of his failure to promote claim. *See Estate of Moreland v. Dieter,* 395 F.3d 747, 759 (7th Cir. 2005) ("Perfunctory or undeveloped arguments are waived"). Therefore, Washington has waived his failure to promote claim and the Court grants ISR's motion for summary judgment as a matter of law.

## CONCLUSION

For these reasons, the Court grants Defendant's Motion for Summary Judgment.

Dated: May 16, 2005

**ENTERED**

**AMY J. ST. EVE**
**United States District Court Judge**

13